**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| MARY L. SCHEETZ, on behalf of plaintiff | ) | |
| and the class members described below, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 CV 811 |
| v. | ) | |
| | ) | |
| PYOD, LLC; | ) | |
| RESURGENT CAPITAL SERVICES, LP; | ) | |
| ALEGIS GROUP, LLC; CAPITAL | ) | |
| MANAGEMENT SERVICES, LP; CMS | | |
| GENERAL PARTNER, LLC; WELTMAN, | | |
| WEINBERG AND REIS CO., L.P.A. | | |
| | | |
| Defendants. | | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS

Defendants, PYOD, LLC ("PYOD"), RESURGENT CAPITAL SERVICES, LP ("RESURGENT"), and ALEGIS GROUP, LLC ("ALEGIS"), (Collectively "these Defendants") by and through their attorneys, David Schultz and Jennifer Kalas, move this Court to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and in support of their motion state as follows:

## INTRODUCTION

Plaintiff originally incurred a debt that she owed to Chase, which was later assigned to PYOD. *See* Complaint, ¶¶33-35. Plaintiff now alleges that PYOD needed a license under the Indiana Uniform Consumer Credit Code ("IUCCC") before it could take assignment of Plaintiff's account. *See* Comp. ¶¶29. Plaintiff never had any contact with any of these Defendants. There are only two letters attached to Plaintiff's complaint. *See* Comp., Exs. A and D. Capital Management Services, LP, which is a licensed Indiana collection agency, sent one

letter to Plaintiff.  *See* Comp. Ex. A.  The law firm of Weltman, Weinberg & Reis Co., LPA sent the other letter to Plaintiff.  *See* Comp. Ex. D.

As Plaintiff named several Defendants in this suit, a summary regarding Plaintiff's allegations as to each Defendant is appropriate before we address Plaintiff's novel theory under the IUCCC. PYOD owns all rights, title and interest to Plaintiff's account pursuant to an agreement made in a state other than Indiana. *Id*. at ¶¶29, 30, 35.  PYOD hired RESURGENT to collect the money Plaintiff owes on the account.  *Id*. at ¶19.  RESURGENT does not own the account so RESURGENT holds a license pursuant to the Indiana Collection Agency Act ("ICAA").  RESURGENT then hired Capital Management Services, LP ("CAPITAL") to collect on the account.  CAPITAL also holds a license under the Indiana Collection Agency Act.  After Plaintiff failed to dispute that she owes the money and she failed to make any payments, the law firm of Weltman, Weinberg & Reis Co., LPA ("WWR") was hired.

Plaintiff only makes one allegation pertaining to ALEGIS and that allegation simply says that ALEGIS is a general partner of RESURGENT.  Plaintiff makes no other allegations regarding ALEGIS's conduct.  *See*  Comp. ¶¶20-21.  Similarly, Plaintiff only makes one allegation regarding CMS GENERAL PARTNER, LLC ("CMS") wherein she alleges that CMS is the general partner of CAPITAL.  These are all of the Defendants that Plaintiff identified in her class action complaint.  Plaintiff seeks to impose liability on all of the named Defendants because Plaintiff incorrectly believes that PYOD needed a license under the IUCCC before PYOD could acquire her account.

The IUCCC license requirement does not apply to PYOD and the Indiana Department of Financial Institutions ("DFI") agrees because the IUCCC license requirement applies only to assignees which are based in Indiana who take assignment and perform direct collection in

Indiana.  Plaintiff's own allegations show that PYOD is not based in Indiana.  *See* Comp. ¶10. Plaintiff's own allegation also show that PYOD did not perform any direct collection in Indiana. *See* Comp. ¶¶36-42.  Thus, Plaintiff fails to state a cause of action because the IUCCC does not require PYOD to obtain a license.

Plaintiff's novel theory asks this Court to disregard the language of the IUCCC, the DFI's interpretation of the IUCCC and the Constitution of the United States.  Plaintiff also asks this Court to become the first Court ever to hold that an out-of-state assignee needs a license under the IUCCC.

## **ARGUMENT**

Plaintiff's complaint should be dismissed because the IUCCC is inapplicable to out-of-state assignees such as PYOD and Plaintiff does not articulate any allegations sufficient to maintain a cause of action under either the Fair Debt Collection Practices Act ("FDCPA") or the Indiana Deceptive Consumer Sales Act ("IDCSA").

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. A claim is facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Under the *Iqbal* and *Twombly* framework, a court considering a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of

3

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Courts are not bound to accept legal conclusions couched in factual allegations as true. *Twombly*, 550 U.S. at 555. Factual allegations must be enough to raise a right to relief above the level of speculation. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679.

I.      **The IUCCC License Requirements Do Not Apply To PYOD**

     A.      **The IUCCC License Requirements Do Not Apply To PYOD**

Plaintiff's complaint should be dismissed because the IUCCC requires assignees to have a license only if they are based in Indiana and take assignment or undertake direct collection of consumer loans in Indiana. PYOD is not based in Indiana. Plaintiff's own allegation show that PYOD is a Delaware limited liability company with its principal place of business in Nevada. *See* Comp. ¶7. Further, PYOD did not perform any direct collections in Indiana. Plaintiff alleges that CAPITAL and WWR performed all of the direct collection.

Plaintiff's novel theory that an out-of-state debt buyer needs a license under the IUCCC, contradicts the language of the IUCCC, the DFI's in interpretation of the IUCCC and the Constitution. The comments to IUCCC §24-4.5-3-502 show that the license requirements apply only to an "out-of-state lender that opens a loan office in this State." The intent to exclude out-of-state entities from licensing requirements is also articulated in the comments to IUCCC §24-4.5-6-201:

       Assignees of consumer obligations must file notification under Section 6.202 only if all of the three following elements are present: (1) the assigned obligations arose out of sales, leases or

4

> loans made in this State, (2) the assignee has an office or place of
> business in this State, and (3) the assignee undertakes direct
> collection of payments from debtors or direct enforcement of
> obligations against debtors.  **An assignee having no office or
> place of business in this State is not required to file notification
> even though he is engaged in direct collection or direct
> enforcement of consumer accounts in this State.**

(emphasis added).   The IUCCC license requirement under §24-4.5-3-502 does not apply to

PYOD because Plaintiff's own allegations establish that PYOD is not based in Indiana.  *See*

Comp. ¶7.

Moreover, the Indiana Department of Financial Institutions ("DFI") agrees that PYOD as

an out-of-state assignee does not need a license under the IUCCC.  The DFI, which is in charge

of administering and enforcing the IUCCC, interprets the IUCCC license requirements to apply

only to those assignees that are based in Indiana:

> **Assignees need a loan license if they are based in Indiana and**
> take assignment or undertake direct collection of the consumer
> loans that were made in Indiana.  See Group Exhibit A (emphasis
> added).

Following the IUCCC's language and its comments, the DFI reasonably interpreted the IUCCC

license requirements to mean that an assignee must be "based in Indiana" for the IUCCC's

license requirements to apply.

A statutory interpretation by an administrative agency in charge of enforcing the statute is

entitled to "great weight."  *City of Gary v. Indiana Dep'. of Envtl. Mgmt.*, 967 N.E.2d 1053, 1057

(Ind. Ct. App. 2012). "If a court determines that an agency's interpretation is reasonable, it

should terminate its analysis and not address the reasonableness of the other party's proposed

interpretation."  *Id*.  Terminating the analysis in favor of the agency's interpretation recognizes

the general policy of acknowledging the expertise of the agency empowered to interpret and

enforce the statute and it increases public reliance on agency interpretations. *Indiana Dep't of*

*Envtl. Mgmt. v. Boone County Resource Recovery Sys., Inc.*, 803 N.E.2d 267, 273 (Ind. Ct. App. 2004). Once the Court finds the agency's interpretation to be reasonable, the Court should end its analysis and the Court should not address the other party's interpretation of the statute. *Roman Catholic Archdiocese of Indianapolis, Inc. v. Metro. Sch. Dist. of Lawrence Twp.*, 945 N.E.2d 757, 766 (Ind. Ct. App. 2011).

The DFI, pursuant to its powers under the IUCCC, stated on numerous occasions that an assignee of an account, such as PYOD, only needs a license if it is based in Indiana. *See* Group Exhibit A. The term "Department" under the IUCCC refers to the DFI, which is in charge of administering and enforcing the IUCCC. *See* §§24-4.5-6-103; 24-4.5-6-108; 24-4.5-6-110; 24-4.5-6-113; 24-4.5-6-124. Specifically, the DFI has the power to "counsel persons and groups on their rights and duties" under the IUCCC. §24-4.5-6-104.

Moreover, even if Plaintiff can overcome her heavy burden and somehow show that the DFI's interpretation of the IUCCC is unreasonable (which she cannot), Plaintiff still cannot establish a violation of the IUCCC. Unlike other statutes, the IUCCC provides that there can be no liability for following the DFI's rule, opinion or interpretation of the IUCCC. Section 24-4.5-6-104 states:

> No liability is imposed under this article for an act done or omitted in conformity with a rule, written notice, written opinion, written interpretation, or written directive of the department . . .

The DFI interpreted the IUCCC's license requirements on July 1, 2010 and July 1, 2012. These documents must qualify as one of the following a written interpretation, directive, opinion, notice or ruling from the DFI. These documents show that the DFI determined that:

> **Assignees need a loan license if they are based in Indiana and** take assignments or undertake direct collection of consumer loans in Indiana.

130527961v1  0941931

*See* Group A.  Thus, the IUCCC license requirement does not apply to PYOD because it is not based in Indiana.  Moreover, the IUCCC license requirement does not apply because PYOD did not undertake direct collection of consumer loans in Indiana.  The DFI confirmed its interpretation as quoted above on a number of occasions. The Indiana government's web-site contains the DFI's "IUCCC Annual Reporting Information", which says that an assignee needs a location in Indiana before the IUCCC requires the assignee to have a license.  *See Id.*[1]  Thus, in this case, there is no violation of the IUCCC and therefore, there can be no violation of any other state or federal statute because PYOD followed the DFI's written interpretation of the IUCCC.

Similar to this case, the defendant in *Riley* attached to its motion to dismiss a letter that responded to defendant's question regarding the application of a statute.  *Riley at Jackson Remonstrance Grp. v. State Bd. of Tax Comm'rs*, 663 N.E.2d 802, 804 (Ind. T.C. 1996).  The Court determined that the agencies, which provided the defendant with the letter, had the responsibility for interpreting the statute at issue.  *Id.* at 806.  The Court ruled that the letter evidences the agencies interpretation of the statute and Indiana courts pay great deference to the reasonable interpretation of an ambiguous statute by the agency charged with administering it. *Id.*  Similarly, here the DFI, which is the agency in charge of administering the IUCCC, consistently determined that the IUCCC license requirement only applies to assignees based in Indiana through its pronouncements on July 1, 2010 and July 1, 2012 and in the DFI's "IUCCC Annual Reporting Information."  *See* Group Ex. A.

---

[1] Opposing counsel issued a Freedom of Information Act ("FOIA") request to the DFI regarding their responses to entities about whether out-of-state debt buyers need a license under the IUCCC.  Opposing counsel attached the DFI's response to plaintiff's response to defendants' motion to dismiss in *Havens v. Portfolio Investment Exchange, Inc.*, case number 12 CV 671, N.D.Ind., Docket #34-2.  The documents produced by the DFI show that the DFI consistently determined that out-of-state assignees, such as PYOD, do NOT need a license under the IUCCC.

130527961v1 0941931

The DFI's interpretation makes sense because if the IUCCC is applied as Plaintiff argues, it would violate the Commerce Clause of the Constitution of the United States. *See Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 665-68 (7th Cir. 2010) (ruling that the IUCCC license requirement would violate the Commerce Clause if it were to apply to contracts that occur in a state other than Indiana). The Indiana legislature could not have required companies like PYOD to being licensed prior to be assigned an account pursuant to an agreement made in a state other than Indiana. Thus, Plaintiff's interpretation of the IUCCC is fatally flawed because Indiana cannot regulate sales which occur outside its borders. *See Glass v. Kemper Corp.*, 133 F.3d 999, 1001 (7th Cir. 1998) ("A state cannot regulate sales that take place wholly outside it."). Plaintiff does not and cannot allege that PYOD was assigned Plaintiff's account in Indiana. *See Midwest*, 593 F.3d at 665 ("The Commerce Clause dictates that no State may force an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another."). Plaintiff does not allege that PYOD performed any conduct in Indiana. Further, as noted previously, Plaintiff alleges that PYOD is a Delaware limited liability company with its principal place of business in Nevada. *See* Comp. ¶7. Therefore, following *Midwest*, Plaintiff's peculiar argument that the IUCCC's license requirements should apply to PYOD would render the IUCCC unconstitutional. The Court should reject Plaintiff's attempt to expand the IUCCC's coverage beyond its breaking point and dismiss Plaintiff's complaint with prejudice.

### B.    The IUCCC Does Not Apply To Services Performed By Attorneys Or Licensed Collection Agencies

Plaintiff's complaint should also be dismissed because the IUCCC does not apply to services performed by attorneys or licensed collection agencies. The IUCCC specifically says that "IC 24-4.5-3-502 . . . are not applicable to services performed by attorneys." 24-4.5-6-204.

130527961v1  0941931

Plaintiff's own allegations show that WWR is law firm. *See* Comp. ¶26. Therefore, according to 24-4.5-6-204, the license requirement under 24-4.5-3-502 do not apply.

Further, the IUCCC license requirement does not apply to either RESURGENT or CAPITAL because they both hold licenses under the Indiana Collection Agency Act. *See* §24-4.5-3-502. Plaintiff alleges that CAPITAL sent her the letter which Plaintiff attaches as exhibit A to the complaint. CAPITAL holds a collection agency license with the State of Indiana. *See* Group Exhibit B; *Buck v. Bayer Healthcare Pharms., Inc.*, No. 1:10-cv-36, 2010 WL 623529, at *1 (N.D. Ind. Feb. 18, 2010) (the Court may take judicial notice of online corporate records).

As a result, Plaintiff's complaint should be dismissed to the extent that she relies on the allegation that PYOD needed a license under the IUCCC before its attorney or a licensed collection agency could send Plaintiff a letter.

## II.     The Complaint Should Be Dismissed With Prejudice Because The Indiana Collection Agency Act Does Not Apply

### A.     The License Requirement Under The Indiana Collection Agency Does Not Apply To Debt Buyers.

To the extent that Plaintiff's complaint can be read to argue that PYOD needed a license under the Indiana Collection Agency Act ("ICAA"), Plaintiff is wrong according to the plain language of the statute. The ICAA only applies to non-debt owning servicers that seek to collect money on behalf of another entity.

The ICAA provides the following definitions:

> (b)    The term "collection agency" means and includes all persons engaging directly or indirectly and as a primary or secondary object, business, or pursuit, **in soliciting claims for collection, or in the collection of claims owed or due or asserted to be owed or due to another**, including child support arrearages under IC 31-25-4 . . .

9

(c)    The term "claim" means any obligation for the payment of money or its equivalent and any sum or sums **owed or due or asserted to be owed or due to another**, for which any person may be employed to demand payment and to collect or enforce payment thereof . . .

IN. Stat. 25-11-1-1 [emphasis added].  The above ICAA definitions show that the ICAA only applies to non-debt-owning servicers that seek to collect money on behalf another.  Debt owners, such as PYOD, do not seek to collect money owed or due to another because debt owners seek to collect money that they are owed.  Section 25-11-1-13(a) of the ICAA further exemplifies how the ICAA only applies to non-debt-owning servicers:

A person who is licensed under this chapter may, for **the purpose of acting as an agent for collection**:

(1) receive another person's accounts, bills or other evidence of indebtedness

(2) be the assignee of another person's accounts, bills, or other evidence of indebtedness; and

(3) **at the direction of an assignor or assignors**;

(A) employ an attorney to represent an assignee in the filing of an action to collect a debt in the county of preferred venue for the action set forth in Rule 75 of the Indiana Rules of Trial Procedure; and

(B) advance court costs for the filing of an action to collect a debt.

IN. Stat. 25-11-1-13(a) [emphasis added].  The first line of ICAA §13(a) shows that the ICAA only applies to "acting as an agent for collection."  Debt owners do not act as an agent for collection because debt owners collect money on their own behalf.  Further, debt owners, such as PYOD, do not act at the direction of the "assignor" because debt owners possess all rights, title

10

and interest to the debt.  Also, unlike non-debt-owning servicers, debt owners do not need permission to send the case to an attorney to file a lawsuit.

      **B.**     **The License Requirement Under The Indiana Collection Agency Does Not Apply To Non-Residents Using Interstate Commerce.**

In addition to not qualifying as a collection agency, the ICAA does not apply to PYOD because even if PYOD were to be considered a collection agency, the ICAA does not apply to nonresidents using interstate commerce.  The ICAA says "[a] nonresident collection agency that has only incidental with a debtor is not required to be licensed under this chapter.  As used in this subsection, incidental contact means contact on behalf of nonresident creditors using interstate communications, including telephone, mail service, or facsimile transmissions."  IN St. §25-11-1-5(d).  The plain language in the aforementioned quote shows that PYOD is not a collection agency under the ICAA because the quote shows that under the ICAA a collection agency collects on behalf of another.  PYOD owns Plaintiffs account, so it does not seek to collect on behalf of another.  However, even if this Court were to consider PYOD to be a collection agency, the plain language of the ICAA license requirement shows that it does not apply here because there was only incidental contact via the two letters that were mailed to Plaintiff.  The only correspondence at issue are the two letters that Plaintiff attaches as Exhibit A and D to her complaint.  Therefore, a license under the ICAA is not required.

**III.**      **Count I Should Be Dismissed Because Plaintiff Fails To Allege A Violation Of The FDCPA**

      **A.**     **There Is No Private Right Of Action Under The IUCCC, So The FDCPA Claim Must Fail.**

Count I of Plaintiff's complaint should be dismissed because Plaintiff's alleged violation of the FDCPA is based solely upon the allegation that PYOD does not have a license under the

130527961v1  0941931

IUCCC.  The IUCCC does not provide Plaintiff with a private right of action for damages based upon an alleged failure to have a license.  The IUCCC provides specific remedies to debtors for specific violations of the act under §24-4.5-5-202.  Nothing in §24-4.5-5-202 allows a debtor to bring a private right of action for damages based upon the facts alleged in Plaintiff's complaint. Undeterred by the absence of any private right of action under the IUCCC, Plaintiff improperly seeks to use the FDCPA as a vehicle to enforce the IUCCC.  This attempt to create a cause of action through the FDCPA frustrates the Indiana legislature's intent under the IUCCC, which was not to provide a private cause of action in this instance.

Moreover, the Seventh Circuit and the other District Courts therein have soundly rejected the proposition that conduct by an entity that allegedly was required to be licensed, or conduct violative of state law, constitutes a violation of the FDCPA.  *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470, 474 (7th Cir. 2007); *Washington v. North Star Capital Acquisition, LLC,* No. 08 C 2823, 2008 WL 4280139, at *2 (N.D. Ill. Sept. 15, 2008); *Rosales v. Unifund CCR Partners*, No. 08 C 3533, 2008 WL 5156681, at *2 (N.D. Ill. Dec. 5, 2008); *Niemiec v. NCO Fin. Sys., Inc.,* No. 1:05 cv 219, 2006 WL 1763643, at *7-9 (N.D. Ind. June 27, 2006).  The FDCPA "does not so much as hint at being an enforcement mechanism for other rules of state and federal law."  *Beler*, 480 F.3d at 474.  The Ninth Circuit specifically rejected plaintiff's theory and held that there is no FDCPA violation for an alleged failure to be licensed under state law.  *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100-1101 (9th Cir. 1996) (holding that plaintiff's remedy lies in state law, not the FDCPA).

Similarly, the court in *Niemiec* also rejected Plaintiff's theory.  *Niemiec* ruled that plaintiff had no viable cause of action under the FDCPA unless plaintiff could allege that

130527961v1  0941931

defendant attempted to collect usurious interest.  *Niemiec* noted the following in regard to

defendant's argument in support of its motion to dismiss:

> The defendants next argue that even if the Court were to find that NCO Portfolio or NCO Financial violated the Indiana UCCC for failure to be properly licensed, "debt collection practices in violation of state law are [not] per se violations of the FDCPA." *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996); *cf. Wehrheim v. Secrest, P.C.*, 2002 WL 31242783, *4 (S.D.Ind.2002) . . ..  Specifically, a violation of state licensing law does not constitute an FDCPA violation.  *See Wade*, 87 F.3d at 1101; *Ferguson v. Credit Management Control, Inc.*, 140 F.Supp.2d 1293, 1302 (M.D.Fla.2001) (sending a nonthreatening collection letter without first obtaining required state license did not violate FDCPA).  In the words of the Ninth Circuit, a violation of state licensing law is "innocuous." *Wade*, 87 F.3d at 1100.
>
> *        *        *        *
>
> The defendants further argue that if the Court were to find that NCO Portfolio or NCO Financial violated the FDCPA by violating the Indiana UCCC licensing requirement, the Court would essentially be providing a federal remedy for an alleged state violation.  In *Olvera*, Judge Posner questioned the propriety of such a result: "This is a stretch, and not merely semantically; it makes the federal statute a vehicle for enforcing a state law, and why would Congress want to do that?" *Olvera*, 431 F.3d at 287.

*Id.* at *7. Thereafter, *Niemiec* held that:

> . . . even if a viable cause of action under the UCCC existed in this case, there is still no viable cause of action under the FDCPA. If the defendants were found to not be properly licensed under the UCCC, Niemiec would still need to properly allege that the defendants had attempted to collect usurious interest.  Niemiec has agreed that Beneficial, a licensed "supervised lender", legally contracted with him for the 26% interest rate.  Thus, there is no factual basis for an allegation that the defendants violated the FDCPA. Accordingly the complaint will be dismissed in its entirety.

*Id.* at *9.  Plaintiff attempts to make the same argument here that *Niemiec* rejected.  Plaintiff

argues that PYOD violated the IUCCC by not obtaining a license and therefore, these

Defendants violated the FDCPA.  Plaintiff attempts to enforce the IUCCC through the FDCPA,

but the FDCPA is not meant to be an enforcement mechanism for state law. *See Beler*, 480 F.3d at 474. Especially in this case where these Defendants had no interaction with the Plaintiff and Plaintiff's alleged technical violation of the IUCCC caused her no damages.

Further, the Seventh Circuit, in *Beler,* 480 F.3d at 474, ruled that:

> There are two problems with Beler's approach. First, § 1692f [of the FDCPA] creates its own rules (or authorizes courts and the FTC to do so); it does not so much as hint at being an enforcement mechanism for other rules of state and federal law. This is not a piggyback jurisdiction clause. If the Law firm violated the Social Security Act, that statute's rules should be applied. Likewise if the Law Firm violated Illinois law. Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship.

Furthermore, the Seventh Circuit in *Olvera,* 431 F.3d 285, rejected a claim that an assignee collecting the rate of interest charged by the original creditor violated the FDCPA because it was not licensed by the Illinois Department of Financial and Professional Regulation. The court observed:

> [Plaintiff's position] makes the federal statute a vehicle for enforcing a state law, and why would Congress want to do that?

*Id*. at 287. Plaintiff not only improperly seeks to use the FDCPA as a vehicle to enforce state law, but she also seeks to create a private cause of action where the Indiana legislature did not intend to have one. There is no private cause of action for damages under the IUCCC based upon the facts alleged. Thus, Count I should be dismissed with prejudice.

**B.     There Is No Liability Under The IUCCC, So There Is No Liability Under The FDCPA**

In addition to improperly attempting to enforce state law through the FDCPA and the fact there is no private right of action under the IUCCC in this case, the Indiana legislature also intended to protect those that followed the DFI's interpretation of the IUCCC from liability.

14

Plaintiff's entire complaint rests upon the IUCCC license requirement because without the IUCCC Plaintiff has no claim. Consequently, any analysis as to whether Plaintiff can state a claim under the FDCPA must start with an analysis of the IUCCC.

As stated above on page 6, the IUCCC states that there is no liability under the IUCCC when an entity follows a written interpretation of the DFI. There is no question that PYOD followed the DFI's written interpretation of IUCCC license requirement. Thus, since the Indiana legislature intended to protect entities such as PYOD from liability for following the DFI's written interpretations, Plaintiff cannot to state a claim under the FDCPA without once again contradicting the Indiana legislature's intent.

### C.      There Is No False, Deceptive Or Misleading Statement

Count I should be dismissed because there is no false, deceptive or misleading statement. Section 1692e of the FDCPA requires Plaintiff to allege a false, deceptive or misleading statement to state a claim. Plaintiff fails to identify any statement in either letter (attached as Exhibits A and D to the complaint), which is false, deceptive or misleading. We are left to guess as to what was the false, misleading or deceptive statement.

The U.S. Court of Appeals for the Ninth Circuit has rejected the theory that the mere sending of the letter without a license violates the FDCPA. *See Wade*, 87 F.3d 1098. The defendant in *Wade* received a referral to collect a delinquent account. *Id*. at 1099. The defendant RCA learned that plaintiff moved to Idaho, so RCA sent a collection letter to the plaintiff's Idaho address. *Id*. RCA did not have a license to collect debts in Idaho. *Id*. Thereafter, plaintiff filed a complaint alleging that RCA violated §1692e of the FDCPA. *Id.*

*Wade* ruled that debt collection practices in violation of state law do not establish a violation of the FDCPA. *Id*. at 1100. *Wade* characterized the sending of a letter directly by RCA without a license in Idaho was "innocuous and not in violation of the FDCPA." *Id.* The Court

15

held there was no violation of §1692e of the FDCPA because the collection letter properly told plaintiff that she had an unpaid debt and the letter did not contain a false representation that RCA had the power to collect in Idaho.  *Id.*

Similarly, in this case, Exhibits A and D to the complaint correctly tell Plaintiff that she has an unpaid debt.  There is no false representation that PYOD is licensed in Indiana.  Thus, Count I should be dismissed because there is no statement in either Exhibit A or D which is false, deceptive or misleading.

**IV.    Count II Should Be Dismissed**

   **A.    Count II Fails To Establish An Intent To Deceive Under The Heightened Pleading Standards Of Rule 9(b)**

Count II should be dismissed because Plaintiff fails to allege with specificity how PYOD acted with an intent to deceive.  Plaintiff alleges that PYOD committed an incurable deceptive act under the IDCSA.  *See* Comp., ¶77.  Therefore, Plaintiff must prove that these Defendants acted with an intent to deceive to establish an incurable deceptive act under the IDCSA. *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 790 (7th Cir. 2011).  Further, a claim of an incurable deceptive act sounds in fraud, so the heightened pleading standards of Rule 9(b) apply and require Plaintiff to allege her claim with specificity.  *See SMC Corp. v. Peoplesoft USA, Inc.*, No. 1:00-cv-01095-LJM.VS., 2004 WL 2538641, at *4-5 (S.D. Ind. Oct. 12, 2004).

The IDCSA states that an "incurable deceptive act means a deceptive act done by a supplier as part of scheme, artifice, or device with intent to defraud or mislead." §24-5-0.5-2(a)(8).  Plaintiff's complaint fails to allege with specificity that these Defendants acted with an intent to deceive.  *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998) ("Intent to defraud or mislead is thus clearly an element of an incurable deceptive act.").  Plaintiff's complaint never even references the word intent or any form of it; except for quoting a portion of the definition of

130527961v1  0941931

"incurable deceptive act."   Rather than allege an intent to deceive, Plaintiff alleges that these Defendants knew or should have known that PYOD needed a license under the IUCCC because of the license requirements in Illinois.   Comp. ¶78; *See  McKinney*, 693 N.E.2d at 69 ("'Should reasonably know' is plainly a lesser standard than 'knowingly violate' or 'intend to mislead.'").

Plaintiff cannot allege that these Defendants acted with an intent to deceive because the DFI stated on multiple occasions that only assignees that are based in Indiana need a license under the IUCCC. *See* Group A.  The opinions from the DFI at the very least show that there was no intent to deceive by these Defendants because even the DFI believed that PYOD did not need a license under the IUCCC.  Moreover, there can be no intent to deceive when the parties dispute how a statute should be interpreted and the agency in charge of the statute agrees with these Defendants.

Rather than address the DFI's interpretation of the IUCCC, Plaintiff astonishingly alleges that these Defendants should have known that it needed a license in Indiana because a PYOD affiliate was sued in Illinois for not having a license.  *See* Comp., ¶78.  Plaintiff does not explain how the license requirements in Illinois have any bearing on Indiana law.  The IUCCC is a uniform code that was adopted by a number of states, but it was not adopted by Illinois.  Thus, Plaintiff's comparison of the Illinois Collection Agency Act ("ICAA") and the IUCCC is flat out wrong.   The ICAA does not govern, regulate or have similar requirements as the IUCCC. However, there is one similarity between this case and the Illinois class actions filed by Plaintiff's law firm wherein Plaintiff's counsel alleged that defendants violated Illinois Consumer Fraud Act for failing to obtain a license under the ICAA.  The Illinois Courts universally rejected arguments by consumer attorneys who tried to allege consumer fraud claims based upon an alleged failure to obtain a license.  *See e.g.*, *LVNV v. Trice*, No. 11 CH 11741 (Ill.

17

Cir. Ct. Feb. 28, 2013); *Betts v. Atlantic Credit Fin., Inc.*, No. 11 CH 23341 (Ill. Cir. Ct. Dec. 7, 2012). Like the plaintiffs in the Illinois cases, Plaintiff cannot state a claim for consumer fraud.

### B.      Count II Fails To Allege With Specificity That Plaintiff Relied On Any Statement Made By These Defendants

Count II also fails to state a claim because Plaintiff fails to allege with specificity that she relied upon any statement made by these Defendants. Rule 9(B) requires Plaintiff to allege with specificity the representations that were made, who made them, when or were they were made and "most importantly" what the statements were that were false and in what respect they were false. *McKinney*, 693 N.E.2d at 73. We are left to guess as to what was the false statement.

Further, the IDCSA expressly requires Plaintiff to allege the element of reliance. *See Kanter v. Merck & Co., Inc.*, Case No. 49D060411PL002185, 2007 WL 3092779 (Marion County April 18, 2007). IDCSA section 24-5-0.5-4 states that "[a] person ***relying*** upon an uncured or incurable deceptive act may bring an action . . ." (emphasis added). Plaintiff fails to allege with specificity how she relied upon any statement made by these Defendants.

### C.      Count II Fails To Allege That Plaintiff Suffered Actual Damages

Count II fails because Plaintiff does not allege that she suffered any actual damages. The IDCSA requires actual damages to state a claim. *See Kantner v. Merck & Co., Inc.*, No. 49D060411PL002185, 2007 WL 3092779, at ¶13 (Ind. Sup. Ct. Apr. 18, 2007), (holding because plaintiff fails to allege actual damages, she fails to state a claim under the IDCSA based upon the "well-established doctrine of 'no injury, no tort,' which 'is an ingredient of every state's law'") (quoting *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002)).

Since Plaintiff fails to allege actual damages, it appears that she improperly seeks to impose a civil fine of $500 on these Defendants. The IDCSA states that the attorney general has

the "exclusive" right to petition for recovery of $500 fine against a person that commits an incurable deceptive act. 24-5-0.5-8.

### D.  PYOD's Conduct Was Expressly Permitted By The DFI

Count II should also be dismissed because PYOD's conduct of not having a license under the IUCCC was expressly permitted by the DFI.  IDCSA §24-5-0.5-6 states that:

> This chapter does not apply to an act or practice that is:

> *        *        *

> (2) required or expressly permitted by state law, rule, regulation, or local ordinance.

Plaintiff cannot alleged a violation of IDCSA because the DFI stated on multiple occasions that only assignees that are based in Indiana need a license under the IUCCC.  PYOD is not based in Indiana.  Moreover, PYOD did not undertake direct collections in Indiana.  Therefore, its conduct has been expressly permitted by the DFI and Count II should be dismissed.

### E.  There Is No Solicitation Or Engagement Of A Consumer Transaction Involving These Defendants

Count II should also be dismissed because these Defendants did not engage in or solicit a consumer transaction.  Plaintiff alleges that these Defendants violated §24-5-0.5-10(a)(1) of the IDCSA.  Comp. ¶75.  Each subsection of §24-5-0.5-10(a)(1) begins with the phrase "solicits to engage in a consumer transaction" or "engages in a consumer transaction."  *See* §24-5-0.5-10(a)(1)(A) through (C).  Thus, for §24-5-0.5-10(a)(1)(A) through (C) to apply, the conduct must involve a solicitation to engage or actually engaging in consumer transaction.

§24-5-0.5-10(a)(1)(A) through (C) does not apply because these Defendants did not solicit or engage Plaintiff.  Plaintiff does not allege that any of these Defendants ever contacted her in anyway, so Plaintiff fails to establish that these Defendants solicited or engaged her.

19

**F.      The Court Should Decline To Exercise Supplemental Jurisdiction**

The Court should dismiss Count II by declining to exercise supplemental jurisdiction over this count.  The only federal claim is asserted in Count I, alleging a violation of the FDCPA.  If this Court dismisses the FDCPA claim, then there is no reason for this Court to retain jurisdiction over remaining state common law claim.  28 U.S.C. § 1367(c) provides that the exercise of supplementary jurisdiction is discretionary.   Supplemental jurisdiction is not a plaintiff's right.  *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 728 (7th Cir. 1998).   Section 1367(c) allows courts to decline to exercise supplemental jurisdiction over a claim under subsection §1367(a) if the court has dismissed all claims for which it has original jurisdiction or in exceptional circumstance where there are other compelling reasons for declining jurisdiction.  *See Berg v. BCS Fin. Corp.*, 372 F.Supp.2d 1080, 1095-96 (N.D. Ill. 2005) (applying § 1367(c)).

WHEREFORE, Defendants, PYOD, LLC, RESURGENT CAPITAL SERVICES, LP, and ALEGIS GROUP, LLC, pray that this Honorable Court grant their Motion to Dismiss Plaintiff's complaint and/or enter any other relief to these Defendants that is equitable and just.

Respectfully submitted on behalf of the
following Defendants, PYOD, LLC,
RESURGENT CAPITAL SERVICES, LP, and
ALEGIS GROUP, LLC,


By:___*s/David M. Schultz*_____
          One of Their Attorneys

20

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on March 4, 2013, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS was filed electronically.  Notice of this filing will be sent to all Counsel of record via the Court's electronic filing system.


                                      <u>*s/David M. Schultz*</u>
                                        Hinshaw & Culbertson LLP
                                        222 N. LaSalle St., Suite 300
                                        Chicago, IL  60601-1081
                                        Tel:    312/704-3000
                                        Fax:    312/704-3001